*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GERRIE LEE HESKETT,

Defendant-Appellant.

UNPUBLISHED
April 30, 2020

Nos. 345966; 349475
Van Buren Circuit Court
LC No. 2018-021429-FH

Before: MARKEY, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 345966, defendant appeals as of right her jury trial conviction of embezzlement of a public official over $50, MCL 750.175. Defendant was sentenced to 30 days in jail and five years' probation. We affirm.

In Docket No. 349475, defendant appeals by delayed leave granted[1] the trial court's award of $20,951.50 in restitution. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the embezzlement of funds related to the sale of grave plots in Maple Hill Cemetery in Hartford Township, Michigan. Defendant was employed as the cemetery sexton from December 18, 1997, until the Hartford Township Board terminated her employment on December 13, 2016. Initially, defendant's duties included cemetery ground maintenance, grave digging, and cleaning the Township Hall. In March 2000, the Township Board voted to reassign the duty of selling grave plots from the Township Clerk, and granted defendant the authority to sell grave plots.

---

[1] See *People v Heskett*, unpublished order of the Court of Appeals, entered October 22, 2019 (Docket No. 349475).

In October 2016, concerns arose regarding possible missing funds from the sale of grave plots, which resulted in an internal investigation. Defendant was the sole person responsible for selling grave plots and collecting monies from the sales. After the sale of a grave plot, a Cemetery Lot Certificate would be issued to the new owner. This certificate bore the signature of the Township Clerk, Julie Sweet. Once the sale was complete, defendant would take the monies received from the purchaser, and place it in a locked money box in the Township Treasurer's office. The Treasurer would deposit the money into the township's bank account, and provide Sweet a receipt. Sweet would then record the income in the township's general ledger.

Defendant sold two grave plots to Randy and Shirley Zimmerman in October 2016. Defendant required the Zimmerman's pay in cash. Although defendant provided the Zimmerman's with a receipt for their purchase, that defendant would only accept a cash payment was troublesome, so the Zimmermans contacted Sweet. Sweet did not have any record of the Zimmerman's payment, and the $600 the Zimmermans had paid to defendant never made it into the Treasurer's box.

An internal investigation was opened, and in the course of that investigation, a second locked money box was discovered in the vault located inside the Township Hall. The box contained $6,000, including the $600 cash payment made by the Zimmermans. It was also discovered that defendant was transferring grave plots that she claimed to own to purchasers, and keeping the cash from those sales. However, there was no record of defendant ever owning any grave plots. Karl Haiser, a forensic accountant, determined that the amount of the loss amounted to $63,920.

At the end of a six-day trial, the jury found defendant guilty of embezzlement by a public official over $50. At a subsequent restitution hearing, the trial court awarded the township $20,951.50 in restitution on the basis of $16,314 in forensic accounting fees, $4,587.50 in attorney fees, and $50 for losses consistent with the jury verdict. These appeals followed.

## II. SUFFICIENCY OF THE EVIDENCE

First, defendant argues that the evidence was insufficient to show that she was an agent or employee of a public official. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo. *People v Speed*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 343184); slip op at 2. "In examining the sufficiency of the evidence, 'this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *Id*. quoting *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

MCL 750.175, in pertinent part, provides that

Any person holding any public office in this state, or the agent or servant of any such person, who knowingly and unlawfully appropriates to his own use, or to the use of any other person, the money or property received by him in his official capacity or employment, of the value of 50 dollars or upwards, shall be guilty of a

-2-

felony, punishable by imprisonment in the state prison not more than 10 years or by fine of not more than 5,000 dollars.

On appeal, defendant only challenges whether she was an agent or servant (employee)[2] of a public officer. As a result, we will not discuss the other elements of the offense herein.

We conclude that there was sufficient evidence for a reasonable jury to find that defendant was an agent or employee of a public officer. In *People v Coutu*, 459 Mich 348, 354; 589 NW2d 458 (1999), the Michigan Supreme Court identified five elements to determine whether an individual is a public officer. The individual's position must satisfy the following:

(1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional. [*Id*. (citation and quotation marks omitted).]

In addition, MCL 15.181(e) defines "public officer" as

a person who is elected or appointed to any of the following:

(*i*) An office established by the state constitution of 1963.

(*ii*) A public office of a city, village, township, or county in this state.

(*iii*) A department, board, agency, institution, commission, authority, division, council, college, university, school district, intermediate school district, special district, or other public entity of this state or a city, village, township, or county in this state.

"An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 699; 930 NW2d 416 (2019) (quotation marks and citation omitted).

In this case, there was trial testimony establishing that defendant was hired as cemetery sexton by the Township Board and that she reported directly to the Township Board. The Hartford Township Board consists of the Township Supervisor, Clerk, Treasurer, and two trustees, who are

---

[2] The Michigan model jury instructions state that the term "servant" is no longer commonly used, so the word "employee" has been substituted in the model instructions. M Crim JI 27.3 n 1.

all elected officials. Initially, the sale of cemetery grave plots was completed by the former Township Clerk. In March 2000, the township transferred the responsibility of selling cemetery plots, arranging for grave openings, and receiving payments to defendant. Defendant's responsibilities involving the sale of cemetery plots continued when the current Township Clerk, Julie Sweet, was elected in 2005. Initially, defendant was required to bring each Cemetery Lot Certificate to Sweet for Sweet's signature following every sale. However, Sweet eventually provided defendant with pre-signed certificates so defendant could complete sales without having to meet with Sweet.

The prosecution presented sufficient evidence that defendant was hired by and reported to the Township Board; that defendant was delegated duties originally belonging to the Township Clerk, an elected official and member of the Township Board; the sale of grave plots required the signature of the Township Clerk; and that Sweet provided defendant with pre-signed Cemetery Lot Certificates so that defendant could carry out her job duties without the clerk's direct oversight. We conclude that a reasonable jury could conclude, on the basis of the foregoing, that defendant was an employee or an agent of a public officer. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Thus, there was sufficient evidence presented at trial that defendant was guilty of embezzlement by a public official over $50.

### III. RESTITUTION AWARD

Defendant also argues that the trial court erred in awarding restitution because the township's fees were incurred as part of its investigation. We disagree.

Defendant failed to properly preserve this argument for appeal by arguing in the trial court that the fees incurred by the township for fees paid to the forensic accountant and legal counsel were inappropriate because it was a result of the township's investigation. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). "A trial court does not have discretion to order a convicted defendant to pay restitution; it must order the defendant to pay restitution and the amount must fully compensate the defendant's victims." *People v Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2011). Whether there is loss and what extent a loss should be compensated "is a matter of statutory interpretation; and this Court reviews de novo the proper interpretation of statutes." *Id.* "[T]his Court reviews the findings underlying a trial court's restitution order for clear error." *Id.* See also MCR 2.613(C). "A finding is clearly erroneous if this Court is left with the definite and firm conviction that a mistake has been made." *Allen*, 295 Mich App at 281. However, unpreserved issues are reviewed for plain error affecting the defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

The Michigan Constitution provides that crime victims have the right to restitution. See Const 1963, art 1, § 24. Moreover, MCL 780.766(2) (part of the Crime Victim's Act, MCL 780.751 *et seq.*) provides, in pertinent part, that

when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.

Under MCL 780.766(1), a "victim" is "an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." The term "victim" "includes a sole proprietorship, partnership, corporation, association, governmental entity, or any other legal entity that suffers direct physical or financial harm as a result of a crime." MCL 780.766(1). MCL 780.767 (1) states that "[i]n determining the amount of restitution to order under [MCL 780.766] the court shall consider the amount of the loss sustained by any victim as a result of the offense." "The term 'course of conduct' must be given 'a broad construction' to best effectuate the intent of the Legislature." *Allen*, Mich App at 282 (citation omitted). "Further, with the Victims Right's Act, the Legislature plainly intended to shift the burden of losses arising from criminal conduct—as much as practicable—from crime victims to the perpetrators of the crimes; thus, it is remedial in character and should be liberally construed to effectuate its intent." *Id*. (quotation marks and citation omitted.)

Defendant relies on *People v Newton*, 257 Mich App 61; 665 NW2d 504 (2003), in support of her argument that restitution is not appropriate to compensate fees incurred as a result of an investigation. In *Newton*, 257 Mich App at 69-70, this Court vacated the trial court's award of restitution to the county sheriff's department, explaining that "the cost of the investigation would have been incurred without regard to whether defendant was found to have engaged in criminal activity." Further, this Court stated that "the general cost of investigating and prosecuting criminal activity is not direct 'financial harm as a result of a crime' " under MCL 780.766. *Id*. at 69-70. However, in *Newton* and similar cases, *law enforcement* sought restitution for its investigation. In this case, it is the *township* that is seeking compensation for its own internal investigation after accusations of possible fraud or embezzlement on the part of defendant surfaced in the fall of 2016, specifically fees for hiring a forensic accountant and attorney. Law enforcement was involved in this case, but it is not seeking compensation for its own investigation.

In this case, the township hired a forensic accountant and legal counsel to aid its investigation concerning defendant's alleged embezzlement. The forensic accountant later testified regarding his findings at defendant's trial. In other words, the township would not have hired these individuals if it did not have concerns regarding possible criminal conduct, and its fees probably would have been less if evidence of embezzlement was not discovered. Ultimately, the township would not have incurred these fees if not for defendant's criminal conduct. As a result, we believe that the township suffered direct financial harm as a result of defendant's criminal conduct related to its internal investigation. See *People v Allen*, 295 Mich App 277, 283; 813 NW2d 806 (2011), where this Court explained that the loss of time that a health insurance investigator spent investigating an employee's attempt to commit prescription fraud could have been investigating other matters, which amounted direct financial harm, which could be measured by assigning a value to the hours spent on the investigation.

Defendant does not challenge the trial court's finding that the value of this loss is $20,951.50 on appeal. Accordingly, the trial court did not err by ordering defendant to pay

-5-

restitution to the township. See *id*. Similarly, defendant has failed to show plain error affecting her substantial rights. See *Carines*, 460 Mich at 763.

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Mark T. Boonstra